■ THERESA O'KEEFFE, Individually and as Administratrix
of the Estate of DAVID O'KEEFFE, Deceased, Respondent, v
STATE OF NEW YORK, Appellant. (Claim No. 60112.) (Appeal
No. 1.) Memo-
randum: On May 22, 1974, David O'Keeffe and his two sons,
Mark, age 16, and Thomas, age 9, and Mark's girlfriend,
Susan Blandford, went fishing at the marina in Beaver Island
State Park. While walking on a boardwalk above one of the
marina walls, Thomas fell into the marina water in the area
of a flushing inlet. His father jumped in the water to attempt
a rescue and after searching unsuccessfully for some form of
equipment to pull them from the water, Mark and Susan also
entered the water to attempt a rescue. All three O'Keeffes
drowned when apparently swept under by a cold flushing
current, and Susan was rescued by another fisherman. Follow-
ing a second nonjury trial (see, O'Keeffe v State of New York,
104 AD2d 43), the Court of Claims found that the State was
negligent in failing to provide lifesaving equipment and that
such failure was a proximate cause of the three deaths. We
agree.

The State, as a landowner, has a duty to exercise reasonable

care in the maintenance and control of its parks to prevent injury to foreseeable users of its facilities *(Preston v State of New York,* 59 NY2d 997; *Caldwell v Village of Is. Park,* 304 NY 268). Where it conducts dangerous activities or allows dangerous conditions to exist, the State must undertake reasonable measures to prevent an injury or neutralize the condition *(Preston v State of New York, supra,* at 998-999; *Scurti v City of New York,* 40 NY2d 433, 441-442). Whether the State undertook reasonable measures in this case "requires a factual weighing of the severity of potential injuries against the burden on the landowner to avoid the risk" *(Mesick v State of New York,* 118 AD2d 214, 217, *lv denied* 68 NY2d 611). Several State employees testified that it was possible or foreseeable that boaters or persons invited to use the marina area for recreational fishing could fall off the boardwalks and into the water. During the boating season, the State provided lifesaving equipment at the boardwalks, but the equipment was stored during the off-season when people were invited to fish and thus, no equipment was available on the date of this tragic accident. Various openings, or flushing inlets, had been constructed in the marina walls so water from the Niagara River could be flushed through the marina area to prevent stagnation of the water. Despite knowledge by the State of the strong swift current in the area of flushing inlets, no signs were posted to warn marina users of that condition. Since the swift nature of the current could not be observed by those on the boardwalk above the inlet areas, the failure to post any warning or to provide lifesaving equipment constituted a failure to exercise reasonable care to prevent foreseeable injury. We reject the State's claim that requiring it to provide lifesaving equipment during the off-season would be unduly expensive and burdensome. The State submitted no evidence of the cost of the equipment it had in storage, and no proof was presented that the lifesaving equipment had been vandalized during the boating season or that acts of vandalism had occurred in the marina area during the off-season. Moreover, the park police substation, situated only a few hundred yards from the marina, was manned during the off-season. In sum, the State has proffered no reason for the withdrawal of the protection afforded by the availability of lifesaving equipment, and we agree that its failure to continue to provide such equipment for use by fishermen was a breach of the duty to exercise reasonable care.

The trial court correctly concluded that the State failed to prove that the decedents were contributorily negligent or that

they assumed the risk of drowning *(see, as to burden of proof,* EPTL 5-5.2, 11.3.2 [b]; *Pontello v County of Onondaga,* 94 AD2d 427, 432, *lv dismissed* 60 NY2d 560). There was no definitive demonstration of what caused young Thomas to fall into the water, and the conduct of his father and brother in attempting to rescue was not wanton, reckless or rash *(see, Guarino v Mine Safety Appliance Co.,* 25 NY2d 460, 463). Since decedents could not have been aware of the swift nature of the current, it cannot be said that they assumed the risk of drowning *(see, Turcotte v Fell,* 68 NY2d 432, 439; Prosser and Keeton, Torts § 68 at 480-498 [5th ed]). (Appeal from judgment of Court of Claims, NeMoyer, J.—negligence.) Present—Doerr, J. P., Boomer, Green, Balio and Lawton, JJ.