OPINION OF THE COURT
Phillip R. Rumsey, J.
Plaintiffs commenced this action seeking damages for the tragic death of their son, Khalil Jamal Godfrey King, who was a 19-year-old sophomore at Cornell University when he died in the early morning hours on August 28, 2010 after falling from a cliff over 200 feet tall into the Fall Creek Gorge on the Cornell campus. Defendant moves for summary judgment. Plaintiffs oppose the motion and seek leave to amend the caption.
The following facts are undisputed. The primary account of King’s last hours and minutes was provided by his friend and *453 fellow Cornell student, Damani Carter.[1] Carter had been communicating with King, who was at a party at the LUL fraternity, by text messages for most of the night of August 27-28. They met at the Psi U fraternity, where King may have smoked marihuana. Carter reports that King was visibly intoxicated. They left Psi U and walked to the SAE fraternity located on Mc-Graw Place to visit friends. As they approached the SAE house, at approximately 3:30 a.m.-3:40 a.m. on August 28, King made a motion to Carter indicating that he should back up and said in a quiet voice, “run, run.” Carter does not know what prompted King to flee. Carter started running and King passed him as they both ran onto the Fall Creek Gorge trail behind the Fiji fraternity house, where Carter stopped running and called for King to stop running; however, King continued running west on the trail toward the Stewart Avenue bridge and passed from Carter’s sight. King did not answer calls Carter made to King’s cell phone a few minutes later, at 3:45 a.m. and 3:48 a.m. It is further undisputed that King’s body was located in the bottom of the Fall Creek Gorge, near the location where he was last seen by Carter, on August 29, 2010; that he died instantly after landing on his head; and that he had a blood alcohol level of .167% at the time of his death (see off of Robin EastmanAbaya, M.D., sworn to Oct. 16, 2012, 1Í 2, exhibit A).
There is no affidavit describing the conditions in the area where King fell; however, defendant submitted photographs depicting the trail in that approximate location (see Nazer off, exhibit C), and plaintiffs’ counsel represents that he personally visited the trail in that location (see affirmation of Leland T. Williams dated May 30, 2013 [Williams affirmation], 1110). Thus, there is no dispute that King left the marked trail, passed through a split-rail fence, and traversed a wooded area for a short distance before reaching the edge of the gorge, where he *454 fell (see e.g. off of Nelson E. Roth, sworn to Apr. 23, 2013, 11 6; mem of law in support of Cornell University’s motion for summary judgment, dated Apr. 23, 2013 at 7; plaintiffs [sic] mem of law in opposition to defendant’s motion for summary judgment and in support of plaintiffs [sic] cross motion for leave to amend case caption, dated May 30, 2013 at 6, 7 [describing the area between the fence and the gorge rim and referring to the photographs submitted by defendant]).
Plaintiffs’ causes of action are all based on allegations that defendant was negligent. Defendant asserted General Obligations Law § 9-103 as an affirmative defense. That statute grants immunity for ordinary negligence to landowners who permit members of the public to use their property for specified recreational activities without charge (see Bragg v Genesee County Agric. Socy., 84 NY2d 544, 546-547 [1994]), including hiking. Defendant argues that King was using Cornell’s publicly-available hiking trail for hiking at the time of his fall and, therefore, that plaintiffs’ claims are barred by General Obligations Law § 9-103. Plaintiffs’ argument that defendant is not entitled to assert the defense because King, as a student, paid for use of the campus facilities, including the trail, is unavailing (see Weller v Colleges of the Senecas, 217 AD2d 280, 285 [1995]; see also Powderly v Colgate Univ., 248 AD2d 365 [1998], lv denied 92 NY2d 811 [1998]; Martins v Syracuse Univ., 214 AD2d 967 [1995]).
“Although not specifically defined under the statute, ‘hiking’ is defined in the Department of Environmental Conservation rules and regulations as traversing land ‘by foot or snowshoe for the purpose of pleasure or exercise’ (6 NYCRR 197.2 [a])” (Cometti v Hunter Mtn. Festivals, 241 AD2d 896, 897 [1997] [emphasis supplied]). Thus, walking is hiking for purposes of the statute only when done for pleasure or exercise. Inasmuch as it is undisputed on the present record that King was walking to a friend’s house when he decided to flee for some unknown reason, with no suggestion in the record that he was walking — or running — for either pleasure or exercise, it cannot be said, as a matter of law, that he was engaged in hiking when he fell into the gorge (see Weese v State of New York, 18 Misc 3d 1115[A], 2004 NY Slip Op 51911[U] [2004], affd 17 AD3d 1176 [2005] [issue of fact existed with respect to whether the plaintiff had been hiking where he asserted that he was walking to a friend’s house]; see also Coote v Niagara Mohawk Power Corp., 234 AD2d 907 [1996]; Cramer v Henderson, 120 *455 AD2d 925 [1986]).[2] Accordingly, summary judgment may not be granted to defendant on the basis that plaintiffs’ claims are barred by General Obligations Law § 9-103.
As a landowner, defendant bears the duty
“ ‘to take reasonable precautions to prevent accidents which might foreseeably occur as the result of dangerous terrain on its property’ (Walter v State of New York, 185 AD2d 536, 538 [1992]; see Preston v State of New York, 59 NY2d 997, 998 [1983]; Cohen v State of New York, 50 AD3d 1234, 1235 [2008], lv denied 10 NY3d 713 [2008]; O’Keeffe v State of New York, 140 AD2d 998, 998-999 [1988], appeal dismissed 73 NY2d 756 [1988]), which includes a duty to warn others of the hazards existing thereon (see Preston v State of New York, 59 NY2d at 998; Cohen v State of New York, 50 AD3d at 1235; see also Grossman v Target Corp., 84 AD3d 1164, 1165 [2011]). The duty to warn, however, does not extend to ‘open and obvious’ dangers — particularly those encompassing ‘natural geographic phenomena which “can readily be observed by those employing the reasonable use of their senses” ’ (Cohen v State of New York, 50 AD3d at 1235, quoting Tarricone v State of New York, 175 AD2d 308, 309 [1991], lv denied 78 NY2d 862 [1991]; see MacDonald v City of Schenectady, 308 AD2d 125, 128 [2003]; Casela v City of Troy, 161 AD2d 991, 991 [1990]; Diven v Village of Hastings-On-Hudson, 156 AD2d 538, 539 [1989]; see also Melendez v City of New York, 76 AD3d 442, 442-443 [2010]; Cramer v County of Erie, 23 AD3d 1145, 1146 [2005]).” (Arsenault v State of New York, 96 AD3d 97, 101 [2012].)
Relying on Tarricone, defendant contends it is entitled to summary judgment on the basis that the gorge is a natural geographical phenomenon presenting an open and obvious *456 danger of which it neither had a duty to warn nor enclose. “[F]or a condition to be open and obvious as a matter of law, it must be one that could not be overlooked by any observer reasonably using his or her ordinary senses” (Arsenault v State of New York, 96 AD3d at 102 [internal quotation marks omitted]; see e.g. Melendez v City of New York, 76 AD3d 442 [2010]; Cramer v County of Erie, 23 AD3d 1145 [2005]; Plate v City of Rochester, 217 AD2d 984 [1995], lv denied 87 NY2d 801 [1995]). There is insufficient proof in the record to establish, as a matter of law, that the gorge in the area where King fell was open and obvious; in fact, there is no evidence whatsoever of the conditions which existed at the edge of the cliff where King fell (see Tagle v Jakob, 97 NY2d 165, 169-170 [2001] [whether a hazard is latent or open and obvious is generally a fact-specific inquiry, and the determination that a risk was open and obvious as a matter of law may be made only upon clear and undisputed evidence]). While defendant submitted photographs of the trail, there are no photographs which depict the edge of the gorge, nor is there an affidavit from any person describing the area along the edge, or rim, of the gorge where King fell, specifically indicating whether it is an open and obvious condition or whether it is obscured by vegetation or other obstructions ((cf. Tushaj v City of New York, 258 AD2d 283 [1999], lv denied 93 NY2d 818 [1999] [plaintiffs’ photographic evidence actually established that the cliff was open and obvious, and not obscured by vegetation, and was corroborated by the testimony of an employee of defendant that the site afforded a wide vista of the Hudson River]). Indeed, it bears noting that the photographs submitted by defendant show the presence of vegetation between the trail and the gorge that could make it difficult to see the edge of the cliff {see Walter, 185 AD2d at 538), and show that the area sloped from the trail to the gorge, but they entirely fail to depict the rim of the gorge, or the conditions in that relevant location. Inasmuch as there is insufficient proof to conclude that the hazard was open and obvious, Tarricone is inapplicable to the present facts.
Where a condition is latent, i.e., not open and obvious, a landowner has a duty to warn and an independent duty to maintain its premises in a reasonably safe condition (see Arsenault v State of New York, 96 AD3d at 103-104, citing DiVietro v Gould Palisades Corp., 4 AD3d 324, 325 [2004]; Cupo v Karfunkel, 1 AD3d 48, 51 [2003]; Cohen v Shopwell, Inc., 309 AD2d 560, 562 [2003]; MacDonald v City of Schenectady, 308 AD2d 125, 128- *457 129 [2003]; Soich v Farone, 307 AD2d 658, 659-660 [2003]). Satisfying the duty to warn is not alone sufficient to absolve a landowner of liability; it must also show that it maintained its premises in a reasonably safe condition under all of the attendant circumstances (id. at 104).
To satisfy the duty to warn, the warnings provided must be sufficient to apprise an individual of the specific danger that he or she ultimately encountered, in this case, falling from a steep cliff (see Arsenault, 96 AD3d at 102 [signs provided a sufficient warning where they expressly advised of the hazard that gave rise to the claim, i.e., falling rocks]; cf. Walter v State of New York, 185 AD2d 536 [1992] [signs which did not expressly mention the specific danger encountered by the claimant, i.e., falling from a cliff obscured by vegetation, failed to provide a sufficient warning]). Defendant has submitted evidence intended to show that it discharged its duty to warn by providing warnings of the specific hazards encountered by King (see e.g. off of Robert T. Bittner, sworn to Apr. 9, 2013, 1Í 6, exhibits D-E [depicts warning signs posted at the Fiji entrance to trail]; off of Bartt Smith, sworn to Apr. 23, 2013, 1ÍH 2-3 [the signs were in place on Aug. 28, 2010]; off of Donald A. Rakow, sworn to Apr. 5, 2013, It 5, exhibit A [a gorge safety brochure with detailed warnings was provided to King and his parents prior to King’s initial enrollment at Cornell for the fall semester 2009]), which has not been rebutted by plaintiffs. However, even if it is assumed, without deciding, that defendant discharged its duty to warn, its motion for summary judgment must be denied because there is insufficient evidence to permit a conclusion, as a matter of law, that it maintained its premises in a reasonably safe condition. As previously noted, the photographs submitted by defendant show the presence of vegetation between the trail and the gorge that could make it difficult to see the edge of the cliff and a split-rail fence that may not have served as an adequate barrier to departures from the trail (see Walter, 185 AD2d at 538). Moreover, it is not possible to determine whether defendant maintained the premises in a reasonably safe condition without evidence of the conditions that existed at the edge of the cliff from which King fell, which, as previously noted, is entirely lacking in the present record.
Based on the foregoing, defendant’s motion for summary judgment must be, and hereby is, denied.
Although they did not file a proper cross motion, plaintiffs seek leave to amend the caption to show that they are suing in *458 their individual, as well as representative, capacities. Inasmuch as the complaint demonstrates that they are suing both as individuals and as coadministrators of King’s estate (see complaint at 1, 8), there can be no prejudice to defendant, which, in any event, did not oppose the request. Accordingly, plaintiffs’ request for leave to amend the caption is granted, and it is amended, nunc pro tune, to conform to the proposed caption attached as exhibit E to the Williams affirmation.

. Carter’s account was provided by a voluntary statement given to the Ithaca Police Department on August 30, 2010 (copies of his statement are included in the reports prepared by the Cornell University Police and the Ithaca Police Department attached as exhibits A and B, respectively, to the off of David J. Nazer, sworn to Apr. 1, 2013 [Nazer off]). Although Carter’s statement is not a properly-sworn affidavit, it may be considered on this motion because it was signed by the witness under penalty of peijury (see Kaufman v Quickway, Inc., 14 NY3d 907 [2010]). It may also be considered in support of defendant’s motion for summary judgment because plaintiffs failed to raise any objection to the technical form of the statement (see Sam v Town of Rotterdam, 248 AD2d 850 [1998], lv denied 92 NY2d 804 [1998]; see also Scudera v Mahbubur, 299 AD2d 535 [2002]; cf. Salas v Town of Lake Luzerne, 265 AD2d 770 [1999]).

. As noted by defendant, with limited exceptions, an individual engaged in any of the activities enumerated in General Obligations Law § 9-103 is presumed to be doing so for recreational purposes, and his or her subjective purpose or intent is irrelevant (see Bragg, 84 NY2d at 552 n 3; Cometti, 241 AD2d at 897; Seminara v Highland Lake Bible Conference, 112 AD2d 630, 632 [1985]). For that presumption to apply, however, it must first be determined that an individual is engaged in one of the enumerated activities. In this case, the determination of whether King was hiking cannot be made without consideration of his purpose for walking on defendant’s premises, because the very definition of hiking is based on the purpose for which an individual is traversing land (i.e., for the purposes of pleasure or exercise).